## FOLEY *v.* KLEIBUSCH.

1. TRUSTS—TITLE OF TRUSTEE—RIGHT TO INJUNCTION.
    A bill to restrain the erection of a building on certain land,
    alleging ownership in complainant in fee, does not debar
    complainant from the relief sought, if he in fact holds title as
    trustee, since 3 Comp. Laws 1897, § 8844, provides that every
    express trust shall vest the whole estate in the trustees, in law
    and in equity, subject only to the execution of the trust.

2. SAME—CHURCH PROPERTY—ROMAN CATHOLIC TENURE.
    A bishop of the Roman Catholic Church, who holds in his in-
    dividual name all the church property within his diocese,
    and who, under the rules and tenets of the church, has com-
    plete authority in regard to the erection of church edifices,
    may maintain a bill to restrain members of a congregation,
    whose church has been destroyed, from rebuilding upon the
    land in violation of conditions which he has imposed.

Appeal from Allegan; Padgham, J.   Submitted October 5, 1899.   Decided March 27, 1900.

Bill by John S. Foley against Matthias Kleibusch and others to restrain the erection of a church upon certain real estate.   From a decree dismissing the bill, complainant appeals.   Reversed.

*Fitz Gerald & Barry* (*Francis A. Stace, Charles R. Wilkes,* and *Keena & Lightner,* of counsel), for complainant.

*Hannibal Hart* (*Lombard & McAllister,* of counsel), for defendants.

MONTGOMERY, C. J.   This is a bill filed by complainant to restrain defendants from constructing a building on land claimed to be owned by complainant, and from interfering with complainant's possession.   The bill alleges that the complainant is the owner in fee simple of two acres of land in the township of Dorr, Allegan county; that defendants have undertaken to build a building thereon attached to the freehold, although they have been prohibited from doing so by the complainant; that complainant is unable to resist the attempts of the defendants by force, and that the acts of the defendants, unless restrained, will constitute a continuing trespass.   The bill prays for relief by injunction.   The answer denies that the complainant is the owner of the land in question in fee simple; and avers that he holds the title in trust for the Roman Catholic Church congregation at North Dorr, known as "St. Mary's Church of North Dorr," and alleges that, as members of that congregation, they were proceeding to build a church on the land in question.   The answer sets up facts tending to show that authority had been given to build such church by the proper ecclesiastical authority.   This allegation is controverted by the complainant.

In this court the defendants plant themselves almost wholly on their denial of complainant's allegation that he

is the owner in fee of the land in question. The history of the title is as follows: March 12, 1858, Matthias Herrig and wife conveyed to Peter Paul Le Fevre, and his heirs and assigns, forever, the land in question. Le Fevre was at the time acting bishop of the diocese of Detroit. Bishop Le Fevre died in 1870. By his will he bequeathed the property in question to John B. Purcell, Roman Catholic archbishop of Cincinnati, and Peter Richard Kenrick, Roman Catholic archbishop of St. Louis, and to the survivor of them, and to their heirs and assigns, or the heirs and assigns of the survivor of them. In this will the testator expressed the hope that the legatees would, as soon as might be after the death of the testator, convey to the person who should become acting bishop of the Roman Catholic diocese of Detroit the property conveyed, "to be by the said person so becoming bishop or acting bishop of said diocese of Detroit, during his lifetime, held and used or disposed of for the formation and welfare, benefit and advantage, of the Roman Catholic Church in and within the diocese of Detroit." This is followed by the following explanation:

"And, further, in order to avoid all doubts, questions, and litigations in reference to this, my last will and testament, I do hereby declare that all contained in the sixty lines of this, my last will, commencing with the twenty-third line on the second page, and ending with the twenty-fourth line of the fourth page, both inclusive, is but the expression of a hope and expectation on my part, and not intended to create a trust or obligation; and, further, I direct, and it is my will, that if all or anything in said sixty lines contained is illegal, void, or not permissible according to law, that then and in such case this, my last will and testament, shall be construed as if said sixty lines were stricken out from or not inserted therein, so as to leave the bequest herein made to my said devisees absolutely and unfettered; and, further, I do here state and declare that, while I have hereinbefore added after the names of my said devisees their respective titles, I have so done only for the purpose of identification, and that said bequests herein made to them, and the survivor of them, are made and intended to be made to them as

individual persons, and not to them in their official capacity; and, further, in the event that any bequest hereinbefore made should for any reason be held void or illegal, then and in such case I do will, devise, and bequeath all and singular my property, real, personal, and mixed, and all demands and choses in action, whereof I may die seised, or to which or to any interest in which I die entitled, subject to the payment of my just debts and funeral expenses, to John B. Purcell, of Cincinnati, Ohio, and Peter Richard Kenrick, of St. Louis, Missouri, and to the survivor of them, to have and to hold the same to them, and the survivor of them, and the heirs and assigns of such survivor, absolutely and forever."

On the 27th of June, 1870, John B. Purcell and Peter Richard Kenrick conveyed all property vested in them by the will of Peter Paul Le Fevre to Caspar H. Borgess, and his heirs and assigns, forever. On the 16th of November, 1888, Caspar H. Borgess conveyed the lands in question (with other lands) to John S. Foley, his heirs and assigns, forever. This deed contained the following clause:

"The further intention of this deed is to convey all the right, title, and interest in and to said property which said first party held or possessed as the Roman Catholic bishop of the diocese of Detroit, and also to deed, sell, and convey to the said second party all other land or interest in lands lying and being in said county, of every name and description, of which I may be seised or possessed in my name or in trust as such bishop or otherwise."

One of the rules of the Roman Catholic Church, which complainant testifies has been in force in the diocese of Detroit since before his appointment, reads as follows:

"All real estate bought or donated for the use and benefit of any church and congregation in this diocese must be deeded in fee simple to the bishop, *i. e.*, the bishop's name, without any prefix or title, and without any conditions whatever in the instrument. If these conditions are not complied with, the deed cannot be accepted, and the pastor or missionary cannot allow the deed to be recorded. If the deeds are obtained, they must be forwarded immediately to the secretary of the bishop."

The complainant contends that no trust was created by the conveyance, for various reasons. The fact that the

bill alleges ownership in fee should not debar complainant, even though the title which he holds is subject to a trust, if he is entitled as trustee to maintain this action. The statute (section 8844, 3 Comp. Laws 1897) provides that every express trust (with a certain exception not material) shall vest the whole estate in the trustees, in law and in equity, subject only to the execution of the trust. The whole estate in this case is the fee in the land in question. It has been frequently held that, in an action by a trustee to reduce the trust estate to possession, the *cestui que trust* is not a necessary party. *Sill* v. *Ketchum*, Har. Ch. 423; *Martin* v. *McReynolds*, 6 Mich. 70; *Adams* v. *Bradley*, 12 Mich. 346; *Snook* v. *Pearsall*, 95 Mich. 534 (55 N. W. 459). The bill is filed here by one in whom the whole title is vested, and by one entitled to maintain possession as against parties who are claimed to be wrong-doers.

We think it unnecessary to decide whether any trust is shown to exist in this case. If there be a trust, it is altogether clear that it was a trust to hold the property according to the rules and tenets of the Roman Catholic Church, which gave the bishop control of the property, and which prohibit the erection of church edifices without his express assent and approval. We may adopt the language of the supreme court of Wisconsin in *Heiss* v. *Vosburg*, 59 Wis. 532, 538 (18 N. W. 466):

"It may be that the court can look into these decrees to ascertain whether the plaintiff owns this property absolutely or whether he holds it subject to a trust.   *   *   * But it is not necessary to consider the effect of these ecclesiastical regulations, because they do not in any degree justify the acts of the defendants. They do not show that the members of the congregation are the *cestuis que trustent* or beneficial owners, so that they have the right to tear down the building without the plaintiff's consent. In any view which we have been able to take of the case, the acts of the defendants are unlawful. They are simply wrong-doers."

So, in the present case, the record shows that, by the

regulations of the Roman Catholic Church, complete dominion over the church property is vested in the bishop. Whether this provision be wise or unwise, absolutely equitable or otherwise, it is upon such a trust, if any exists, that the defendants must rely. They have failed to justify their acts under this alleged trust. It follows that the complainant has the right to insist that his possession of the property shall not be disturbed.

The decree will be reversed, and a decree entered for complainant.

The other Justices concurred.